**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**JOHN BENNETT,**

   **Plaintiff,**         **Case No. 17-cv-12249**

    **v.**           **District Judge Matthew F. Leitman**

**OBELL T. WINN,**        **Magistrate Judge Mona K. Majzoub**
**et al.,**

   **Defendants.**
_____/

## REPORT AND RECOMMENDATION

Plaintiff John Bennett, filed this *pro se* civil rights matter against Defendants Obell T. Winn, James Zummer, Todd McLean, Michael Norman, Shearman Simpson, Marvin Sanders, Karin Florey, Wendy Wright and Jason Deshais, all of whom are employees of the Michigan Department of Corrections ("MDOC"). (Docket no. 1.) Plaintiff claims that while he was in MDOC custody at Saginaw Correctional Facility ("SRF"), Defendants failed to protect him from assaults by fellow inmates in violation of the Eighth Amendment to the United States Constitution. (*Id.* at 5-39.)

Defendants filed a Motion for Summary Judgment, contending that Plaintiff failed to exhaust his administrative remedies and that Plaintiff's claims are barred by the statute of limitations. (Docket no. 18.) This matter has been referred to the undersigned for all pretrial proceedings, including a report and recommendation on all dispositive matters pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 7.) The undersigned has reviewed the pleadings and dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f).

1

## I.     RECOMMENDATION

For the reasons stated herein, the undersigned recommends that the Defendants' Motion for Summary Judgment (docket no. 18) be **GRANTED IN PART** and **DENIED IN PART**. The Court should find that material questions of fact remain regarding whether Plaintiff exhausted his administrative remedies in connection with the claims described in grievance no. SRF 2014-03-0420-28E.   However, the Court should grant summary judgment in favor of Defendants with respect all matters outside the scope of that grievance, including the December 12, 2013 altercation between Plaintiff and inmate Ralph Meredith.   In addition, the Court should conclude that Plaintiff's claims arising from the January 10, 2014 incident are not barred by the statute of limitations.   However, the Court should grant Defendants' motion for summary judgment with respect to all claims that accrued prior to the January 10, 2014 incident, because those claims do not benefit from administrative tolling and were filed beyond the statute of limitations.

## II.     REPORT

### A.     Background

Plaintiff arrived at SRF in August of 2012.   (Docket no. 1, p. 6.)   The alleged events giving rise to Plaintiff's claims began in July of 2013, when Plaintiff suspected that his then-cellmate Ralph Meredith was stealing Plaintiff's personal items, including his television.   (*Id.* at pp. 6-8.)   In November of 2013, Plaintiff wrote to Defendant Norman requesting to be moved to a different cell due to "several threats of physical harm by Mr. Meredith."   (*Id.* at p. 9.) According to Plaintiff, Defendant Norman refused to relocate Plaintiff and subsequently chided him, within earshot of other inmates, about "snitch[ing] on Meredith."   (*Id.*)   Dissatisfied with Defendant Norman's response, Plaintiff wrote to Defendant Winn regarding the "violent threats"

made by Meredith.  (*Id.* at 10.)  Plaintiff asserts that Defendant Winn agreed to investigate the matter but took no action prior to December 12, 2013, when Meredith physically assaulted Plaintiff in their cell.  (*Id.* at 11-12.)

After the December 2013 assault, Plaintiff was relocated to the maximum-security Unit #600.  (*Id.* at 14-15.)  Plaintiff's new cellmate was Christopher Beal.  (*Id.* at 16.)  On January 3, 2014, Beal confronted Plaintiff regarding his conviction for child molestation as well as the allegation that Plaintiff had snitched on Meredith.  (*Id*. at 17.)  As a result, Beal demanded that Plaintiff move to a different cell, and threatened to harm Plaintiff otherwise.  (*Id.*)

On January 5, 2014, Plaintiff wrote to Defendant McLean in order to request an "immediate" cell change because his "life [was] in danger."  (*Id.* at 18.)  According to Plaintiff, Defendant McLean criticized Plaintiff for going "over [Defendant Norman's] head to the Deputy Warden" regarding the threats from Meredith.  (*Id.* at 19.)  Nevertheless, Defendant McLean agreed to "work on getting [Plaintiff] moved out of that cell."  (*Id.*)  The next day, Plaintiff wrote to Defendant Winn, again requesting to be moved due to the violent threats from Beal.  (*Id.* at 20.)  Plaintiff contends that Defendant Winn refused to allow Plaintiff to change cells and threatened to relocate him to a different correctional facility.  (*Id.* at 20-21.)

On January 10, 2014, Beal confronted Plaintiff in their cell, loudly asking, "What's up on that move?"  (*Id.* at 21.)  Plaintiff explained that he had requested to be transferred, but Beal remained upset.  (*Id.*)  After dinner on that evening, Plaintiff exited the chow hall and began walking back to his cell.  (*Id.* at 22.)  Plaintiff asserts that a group of prisoners blocked the walkway while Beal attacked Plaintiff with a "shank," stabbing Plaintiff once in the left side of his neck and once in his right shoulder.  (*Id.* at 22-23.)  Plaintiff contends that there were "NO Yard Corrections Officers standing on post in front of Unit #600, nor in the corner of the L-

Shape, razor fence walkway," and accuses Defendants Sanders, Florey, and Wright of "knowingly abandon[ing] their security post." (*Id.*)

After the January 10, 2014 altercation with Beal, Plaintiff was treated at St. Mary's Hospital in Saginaw. (*Id.* at 25.) Upon returning to SRF on January 11, 2014, Plaintiff was housed in an administrative-segregation ("ad-seg") cell. (*Id.* at 26.) On January 15, 2014, Plaintiff was relocated to a new cell in Unit #500. (*Id.* at 29.) On January 17, 2014, Plaintiff called his attorney, Brett DeGroff, to discuss the possibility of pursuing a civil lawsuit against SRF staff in connection with the January 10 incident. (*Id.* at 29-30.) After the call, Plaintiff began to draft a Step I grievance. (*Id.* at 30.) On January 18, 2014, Defendant Deshais conducted an inspection of Plaintiff's cell and claimed to find a shank and a tattoo needle in Plaintiff's locker. (*Id.* at 31.) Plaintiff contends that these items were planted. (*Id.*) As a result, Plaintiff was moved to a punitive-segregation cell, where he was not allowed to possess legal materials, including the Step I grievance he had begun drafting. (*Id.* at 32.) Plaintiff contends that he asked for a replacement Step I grievance form, but was told that "the unit was out of grievance forms." (*Id.*) On January 28, 2014, Plaintiff was relocated to a cell in ad-seg, but was still prohibited from possessing legal materials. (*Id.*) Plaintiff contends that Defendant Zummer denied Plaintiff's request to contact his attorney and/or to obtain legal materials from his property. (*Id.* at 33.)

Plaintiff submits that on February 6, 2014, he attempted to question Defendant Winn regarding the events leading up to the January 10 incident. (*Id.* at 34.) Plaintiff contends that, instead of answering his questions, Defendant Winn raised the subject of the weapons found in Plaintiff's cell. (*Id.* at 35.) When Plaintiff asserted that Defendant Deshais planted the weapons, in order to disrupt Plaintiff's preparation of a civil lawsuit, Defendant Winn became upset and

threatened to transfer Plaintiff to another facility.  (*Id.* at 36.)  Plaintiff contends that Defendant Winn denied Plaintiff's request for a Step I grievance form and that, later on that same day, another prison official denied him a grievance form.  (*Id.* at 37.)

On February 13, 2014, Plaintiff was transferred from SRF to Ionia Correctional Facility ("IBC").  (*Id.*)  Upon arriving at IBC, Plaintiff obtained a Step I grievance form and delivered the form to IBC Assistant Resident Unit Supervisor Leslie Beak to be delivered to SRF via U.S. Mail.  (*Id.* at 38.)  Beak informed Plaintiff that his inmate trust account had insufficient funds to send the grievance form by mail, and that the package would have to be delivered by the "Interdepartmental Mail System."  Plaintiff followed Beak's instructions and placed his Step I grievance in the Interdepartmental Mail on February 13, 2014.  (*Id.* at 39.)

Having received no response to his Step I grievance, Plaintiff filed another grievance, which the SRF grievance coordinator received on March 24, 2014.  (Docket no. 23, p. 46.)  This replacement grievance was rejected as "untimely pursuant to PD 03.02.130."  (*Id.*)  Plaintiff appealed the decision to Step II, contending that his original grievance was timely filed on February 13, 2014.  (*Id.* at 89.)  The rejection was upheld at Step II based on Defendant Winn's assertion that "[t]here is no record of the SRF Grievance Coordinator receiving the original grievance" and that "Saginaw (SRF) is not on the 'interdepartmental mail' route."  (*Id.* at 90.) That determination was upheld at Step III.  (*Id.* at 94.)

Plaintiff filed the present complaint, dated July 5, 2017, alleging that Defendants violated the Eighth Amendment by acting with deliberate indifference to the risk of violent assaults upon him.  (Docket no. 1.)  Defendants filed a motion for summary judgment, contending that Plaintiff failed to exhaust his administrative remedies and that his claims are barred by the statute of limitations.  (Docket no. 18.)

### B.   Governing Law

Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Docket no. 18.)  Summary judgment is appropriate where the moving party shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party has the burden of showing an absence of evidence to support the non-moving party's case.  *Covington v. Knox Cnty. Sch. Sys.*, 205 F.3d 912, 915 (6th Cir. 2000).  Rule 56 provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  "The court need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).

Once the moving party has met its burden of production, the non-moving party must come forward with significant probative evidence showing that a genuine issue exists for trial. *Covington*, 205 F.3d at 915.  A mere scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment; rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  Ultimately, a district court must determine whether the record as a whole presents a genuine issue of material fact, drawing "all justifiable inferences in the light most favorable to the non-moving party."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)*; Hager v. Pike County Bd. Of Educ.*, 286 F.3d 366, 370 (6th Cir. 2002).

In responding to a motion for summary judgment based on failure to exhaust available administrative remedies, it is not the prisoner's burden to plead or prove that he has successfully done so. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Rather, failure to exhaust administrative remedies is an affirmative defense, *Jones*, 549 U.S. at 216, and so Defendants carry the burden of persuasion on the issue, *Surles v. Andison*, 678 F.3d 452, 455-56 (6th Cir. 2012). "In cases where the party moving for summary judgment also bears the burden of persuasion at trial, the party's 'initial summary judgment burden is higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Surles*, 678 F.3d at 455–56 (quoting *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001)). In such cases, "[s]ummary judgment is appropriate only if defendants establish the absence of a 'genuine dispute as to any material fact' regarding non-exhaustion." *Id.* (citing *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011)).

C.     **Analysis**

Defendants move for summary judgment on the basis that Plaintiff failed to exhaust his administrative remedies and that Plaintiff's claims are barred by the statute of limitations. (Docket no. 18.) The undersigned will address these arguments separately below.

1.     *Exhaustion of Administrative Remedies*

Defendants contend that Plaintiff failed to exhaust his administrative remedies. (Docket no. 18, p. 17.) In particular, Defendants submit that Plaintiff's grievance "did not clearly indicate who were the individuals being grieved," that Plaintiff only attempted to resolve his grievance with Defendant Winn, that the grievance "alleged a multitude of unrelated events," and that the grievance was "rejected as untimely." (*Id.* at 22.)

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust all administrative remedies before filing a § 1983 action.  Specifically, the statute provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . , or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The exhaustion requirement is mandatory and requires a prisoner to comply with state procedural rules such as time limits for filing grievances and other critical procedural rules.  *Jones v. Bock*, 549 U.S. 199, 211 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).  "[P]roper exhaustion of administrative remedies . . . means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)."  *Woodford*, 548 U.S. at 90 (citation omitted).  "Under the [Michigan] Department of Corrections' procedural rules, inmates must include the '[d]ates, times, places and names of all those involved in the issue being grieved' in their initial grievance."  *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010).

In the Step I grievance received on March 24, 2014 (SRF 2014-03-0420-28E), Plaintiff described the January 10 attack, and posed several questions to Defendant Winn, including why there were no officers "on post" outside of Unit #600 at the time of the incident.  (Docket no. 23, pp. 47-48.)  This "replacement grievance" is substantially similar to the grievance that Plaintiff alleges to have filed on February 13, 2014.  (*Id.* at 41-44.)  Plaintiff cites no other grievances relevant to his claims.

At Step I, SRF officials rejected Plaintiff's grievance on the basis that "[g]rievable issues are to be forwarded to the grievance coordinator nine business days after the problem originally developed."  (Docket no. 18, p. 41.)  Accordingly, the grievance was "deemed untimely pursuant to PD 03.02.130 (Prisoner/Parolee Grievances)."  (*Id.*)

In his Step II appeal, Plaintiff contended that the decision to "reject his 02/13/14 Step One grievance, as being 'untimely,' was based on a misinterpretation of the facts and a clerical error." (Docket no. 23, pp. 20-21.)  However, the Step I determination was upheld at Step II, with SRF officials repeating that "grievable issues are to be forwarded to the Grievance Coordinator within (9) nine business days after the issue originally developed; Grievant failed to do so." (Docket no. 18, p. 40.)  The Step II Respondent, Defendant Winn, further stated that "Saginaw (SRF) is not on the 'interdepartmental mail' route, so documents sent via that process would likely not make it to the facility." (*Id.*)  That determination was again upheld at Step III. (*Id.* at 38.)

As noted above, failure to exhaust administrative remedies is an affirmative defense, and Defendants carry the burden of persuasion on that issue.  *Surles*, 678 F.3d at 455-56.  For the reasons set forth below, questions of material fact remain regarding (1) whether the MDOC grievance procedure was "reasonably available" to Plaintiff and (2) whether Plaintiff nevertheless complied with the grievance procedure.

Although the PLRA mandates exhaustion of administrative remedies, the exhaustion requirement hinges on the "availab[ility]" of administrative remedies.  *Ross v. Blake*, 136 S. Ct. 1850, 1858–59, 195 L. Ed. 2d 117 (2016).  Accordingly, an inmate is required to exhaust only those grievance procedures that are "capable of use" to obtain "some relief for the action complained of." *Id.*  An administrative procedure is "unavailable" when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.*  In addition, the undersigned observes that "if the plaintiff contends that he was prevented from exhausting his remedies [the defendant] must . . .

present evidence showing that the plaintiff's ability to exhaust was not hindered." *Surles*, 678

F.3d 452, 457 n. 10 (6th Cir. 2012).

MDOC Policy Directive 03.02.130 establishes the grievance procedure applicable to this

case.  Paragraph P of that directive provides in pertinent part as follows:

> Prior to submitting a written grievance, the grievant shall attempt to resolve the
> issue with the staff member involved within two business days after becoming
> aware of a grievable issue, unless prevented by circumstances beyond his/her
> control . . . .  If the issue is not resolved, the grievant may file a Step I grievance.
> The Step I grievance must be filed within five business days after the grievant
> attempted to resolve the issue with appropriate staff.

A grievance may be rejected because it is filed in an untimely manner; however, "[t]he grievance

shall not be rejected if there is a valid reason for the delay; e.g., transfer."  MDOC Policy

Directive 03.02.130(G)(3).

Plaintiff alleges that, following the January 10 incident, he was held in punitive and

administrative segregation units in which he was not allowed to possess legal materials,

including a copy of the Step I grievance he had begun drafting.  (Docket no. 1, pp. 32-33.)  In

addition, Plaintiff contends that he was twice denied a replacement grievance form during that

time.  (*Id.* at 32, 37.)  Finally, Plaintiff emphasizes that he was transferred from SRF to IBC on

February 13, 2014, further complicating his efforts to file a Step I grievance.  (*Id.* at 38.)  These

allegations raise material questions of fact regarding whether MDOC officials "thwarted"

Plaintiff's access to the grievance procedure, thus rendering administrative remedies

"unavailable" to Plaintiff.  *See Ross*, 136 S. Ct. at 1858–59.

Furthermore, Plaintiff contends that his original grievance was timely because he mailed

that document on February 13, 2014, which is five business days after he attempted to resolve his

dispute with Defendant Winn on February 6, 2014.  And indeed, Defendants' basis for finding

Plaintiff's grievance untimely suffers from significant defects.  First, Defendants stated that "that

grievable issues are to be forwarded to the Grievance Coordinator within (9) nine business days after the issue originally developed." (Docket no. 18, pp. 12-13.) However, Defendants fail to cite any authority for that requirement, which is not found in PD 03.02.130. More significantly, Defendants do not dispute Plaintiff's assertion that he was instructed to use interdepartmental mail to send a grievance to a facility that was not on the interdepartmental mail route. (*Id*. at 13-14; docket no. 23, pp. 97-98.) That instruction directly contradicted Paragraph R of PD 03.02.130, which provides that "[i]f an interdepartment mail run is not available and the prisoner does not have sufficient funds to mail the grievance, postage shall be loaned as set forth in PD 05.03.118 'Prisoner Mail.'"

Turning to the alleged deficiencies in Plaintiff's grievance other than, the Court should find that the grievance does not "contain[] multiple unrelated issues." The January 10, 2014 altercation between Plaintiff and Beal forms the crux of Plaintiff's grievance, notwithstanding the references to issues that arose in the aftermath thereof. (Docket no. 18, pp. 41-42.) In addition, the Court should find that the grievance clearly identifies Defendants Winn, Wright and Flowery, and contends that those Defendants failed to prevent the stabbing. (*Id.*)

Accordingly, the Court should find that material questions of fact remain regarding whether Plaintiff exhausted his administrative remedies in connection with the claims described in grievance no. SRF 2014-03-0420-28E. However, the Court should grant summary judgment in favor of Defendants with respect all matters outside the scope of that grievance, including the December 12, 2013 altercation between Plaintiff and Meredith.

2. *Statute of Limitations*

Defendants assert that Plaintiff's claims are barred by the statute of limitations. (Docket no. 18, p. 15.) Plaintiff's complaint, which is dated July 5, 2017, contains allegations arising as early as July of 2013. (Docket no. 1, pp. 6-39.)

In *Wilson v. Garcia*, 471 U.S. 261, 276–280 (1985), the Supreme Court held that the appropriate statute of limitations to be applied in all § 1983 actions is the state statute of limitations governing actions for personal injury. Subsequently, in *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986), the Sixth Circuit held that Michigan's three year statute of limitations for personal injury claims governs § 1983 actions when the cause of action arises in Michigan.

The accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law. *Wallace v. Kato*, 549 U.S. 384, 388, 127 S. Ct. 1091, 1095 (2007). The statute of limitations begins to run in a § 1983 action when a plaintiff knows or has reason to know of the act providing the basis for the injury has occurred. *See Edison v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 635 (6th Cir. 2007) (citing *Kuhnle Bros., Inc. v. County of Geauga*, 103 F.3d 516, 520 (6th Cir. 1997)). The statute of limitations for claims subject to the PLRA is tolled while the plaintiff exhausts his required administrative remedies. *Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000). Therefore, the limitation period did not run while Plaintiff invoked the MDOC grievance process.

Defendants assert that the statute of limitations on Plaintiff's claims began to run on January 28, 2014, which Defendants mistakenly characterize as the date on which Plaintiff "was attacked by another prisoner." (Docket no. 18, p. 16.) Using that date, Defendants contend that Plaintiff was required to file his complaint by July 2, 2017 (three years from January 28, 2014,

plus 155 days of administrative tolling).  (*Id.*)  For the reasons set forth below, the Court should depart from Defendants' analysis of the applicable limitations period.

First, Plaintiff alleges that he was attacked by inmate Beal on January 10, 2014.  (Docket no. 1, p. 22.)  The Court should determine that Plaintiff's deliberate indifference claim with respect to the attack by Beal accrued on that date.  In addition, as noted above, the limitation period was tolled "while [Plaintiff] invoked the MDOC grievance process."  *See Surles*, 678 F.3d at 458 (6th Cir. 2012).  Defendants assert that this tolling period ran from March 17, 2014 (the date Plaintiff mailed his "replacement" grievance) through August 19, 2014 (the date Plaintiff received the MDOC's Step III response), a period of 155 days.  (Docket no. 18, p. 16.)  However, Plaintiff contends that he submitted his original grievance—which he was improperly directed to file through interdepartmental mail—on February 13, 2014.  (Docket no. 23, pp. 97-98.)  Accordingly, the Court should find that the limitations period was tolled from February 13, 2014 through August 19, 2014, a period of 194 days.  Using this tolling period, the statute of limitations for claims arising from the January 10, 2014 altercation expired on July 23, 2017.

Because Plaintiff filed his complaint on July 5, 2017, the Court should conclude that Plaintiff's claims arising from the January 10, 2014 incident are not barred by the statute of limitations.  However, the Court should grant Defendants' motion for summary judgment with respect to all claims that accrued prior to the January 10, 2014 incident, because those claims do not benefit from administrative tolling and were filed beyond the statute of limitations.

D.     **Conclusion**

For the reasons stated herein, the undersigned recommends that Defendants' Motion for Summary Judgment (docket no. 18) be **GRANTED IN PART** and **DENIED IN PART**.  The Court should find that material questions of fact remain regarding whether Plaintiff exhausted his

administrative remedies in connection with the claims described in grievance no. SRF 2014-03-0420-28E.   However, the Court should grant summary judgment in favor of Defendants with respect all matters outside the scope of that grievance, including the December 12, 2013 altercation between Plaintiff and Meredith.   In addition, the Court should conclude that Plaintiff's claims arising from the January 10, 2014 incident are not barred by the statute of limitations.   However, the Court should grant Defendants' motion for summary judgment with respect to all claims that accrued prior to the January 10, 2014 incident, because those claims do not benefit from administrative tolling and were filed beyond the statute of limitations.

## III.    NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Eastern District of Michigan Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal.   *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *U.S. v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).   Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.   *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).   Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc.   Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains.   Not later than fourteen days after service of an objection, the opposing party must file a concise

14

response proportionate to the objections in length and complexity.   The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.


Dated: June 6, 2018                    s/ Mona K. Majzoub
                                       MONA K. MAJZOUB
                                       UNITED STATES MAGISTRATE JUDGE


## **PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Plaintiff and counsel of record on this date.

Dated: June 6, 2018                    s/ Leanne Hosking
                                       Case Manager