UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN ERIC BENNETT,

      Plaintiff,                         Case No. 17-cv-12249

                                          Hon. Matthew F. Leitman

v.

O'BELL T. WINN, *et al.*,

      Defendants.

_____/

## ORDER (1) OVERRULING DEFENDANTS' OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION (ECF No. 69), (2) ADOPTING THE RECOMMENDED DISPOSITION OF THE REPORT AND RECOMMENDATION (ECF No. 68), AND (3) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 36)

Plaintiff John Eric Bennett is a state prisoner in the custody of the Michigan Department of Corrections (the "MDOC").  In this *pro se* civil rights action, Bennett alleges that certain MDOC employees violated his rights under the First and Eighth Amendments to the United States Constitution and committed negligence under Michigan law. (*See* Compl., ECF No. 1.)  The remaining Defendants are Jason Deshais,[1] Karin Florey, Todd McLean, Obell T. Winn, and Wendt Wright.  They

_____

[1] Defendant Deshais' name is spelled as "Deshias" on the Court's docket.  The Magistrate Judge's Report and Recommendation also refers to him as "Deshias" (*see* R&R, ECF No. 68, PageID.1449), but Bennett and Defendants refer to him as "Deshais." (*See* Compl. ¶ 11, ECF No. 1, PageID.4–5; Mot. for Summ. J., ECF No.

filed a Motion for Summary Judgment on all of Bennett's remaining claims. (*See* Mot. for Summ. J., ECF No. 36.)  In the motion they argued that Bennett lacks evidentiary support for his claims (but they do not seek summary judgment based on qualified immunity). (*See* Addendum to Mot. for Summ. J., ECF No. 37.)  The assigned Magistrate Judge issued a Report and Recommendation (the "R&R") in which he recommended that Defendants' motion be granted in part and denied in part. (*See* R&R, ECF No. 68.)  Defendants have now filed timely objections to the R&R. (*See* Objections, ECF No. 69.)  For the reasons explained below, Defendants' objections are **OVERRULED**, the recommended disposition of the R&R is **ADOPTED**, and Defendants' Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**.

I

A

During the relevant time period, Bennett was incarcerated at the Saginaw Correctional Facility ("SRF"). (*See* Compl. ¶ 4, ECF No. 1, PageID.2.[2])  Winn was the deputy warden at SRF. (*See id.* ¶ 5, PageID.2–3.)  McLean was an Assistant

---

36, PageID.500.)  For the purposes of this Order, the Court will refer to this Defendant as "Deshais."

[2] Bennett's Complaint is a verified complaint. (*See* Compl., ECF No. 1, PageID.50.) His complaint "therefore carries the same weight as would an affidavit for the purposes of summary judgment." *El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008).

Resident Unit Supervisor ("ARUS") at SRF and was assigned to Housing Unit #600. (*See id.* ¶ 6, PageID.3.)  Florey and Wright were SRF corrections officers assigned to the facility's "Yard Crew." (*Id.* ¶ 10, PageID.4.)  Deshais was an SRF corrections officer assigned to Housing Unit #500. (*See id.* ¶ 11, PageID.4–5.)

On December 12, 2013, Bennett was physically assaulted by his cellmate, Ralph Meredith. (*See id.* ¶¶ 21, 50–58, PageID.6, 11–12.)  After the assault, Bennett was transferred to Housing Unit #600 at SRF. (*See id.* ¶¶ 88–89, PageID.16.) Bennett's new cellmate, Christopher Beal, explained that there was gang activity in Unit #600 and that he (Beal) was a member of "The Bloods" gang. (*See id.* ¶¶ 88, 90.)

On January 3, 2014, Beal accused Bennett of being a child molester and of snitching on Meredith while Bennett lived with Meredith. (*See id.* ¶ 94.)  Beal then threatened Bennett, telling him: "YOU GOT TO GO!   My last bunky [cellmate] . . . had a CSC [criminal sexual conduct] case.  He didn't want to pay us, so we (The Bloods) made him move out of the unit because he was about to get stabbed.  So, I don't care how you do it . . . tell the ARUS [i.e., McLean] you don't want to Lock-in this cell.  But you're moving." (*Id.* ¶ 96.)  Bennett "became very nervous and worried about his safety" after this conversation with Beal. (*Id.* ¶ 97.)

On January 5, 2014, Bennett wrote a letter to McLean explaining the danger he was in by sharing a cell with Beal. (*See* 1/5/14 Letter to McLean, ECF No. 65-1,

3

PageID.1358.)  In the letter, Bennett said: "I don't feel safe, because I believe my life is in danger." (*Id.*)  Bennett concluded his letter by requesting that McLean "please, please move me out of [my] cell []?  Or place me in protective custody?  Because I am afraid of what could happen to me if I stay in this cell." (*Id.*)  Bennett delivered this letter to McLean's office on January 6, 2014. (*See* Compl. ¶ 101, ECF No. 1, PageID.18.)

Later that day, Bennett spoke in-person with McLean.  During that conversation, Bennett expressed that he did "not feel safe in [his] cell" and requested that McLean "put me in protective custody or move me to Housing Unit #500[.]" (*Id.* ¶ 102–105, PageID.18–19.)  McLean responded by saying:

> We aren't so quick to put someone in protective custody just because they ask for it.  There's an investigation protocol that has to take place, then a determination has to be made.  As for now, I suggest you return to your cell and try to reconcile with prisoner Beal.  If you have any more troubles, you let me know.  In the meantime, I'll work on getting you moved out of that cell.

(*Id.* ¶ 108, PageID.19.)  McLean also warned Bennett against going "behind my back to the warden" – i.e., to Defendant Winn – with complaints "about any of my officers." (*Id.* ¶ 106.)  McLean then threatened Bennett that he would "transfer [Bennett's] ass to Ionia or across that bridge" if he found out that Bennett "went behind my back to the warden" with any complaints. (*Id.*)

Despite McLean's threat, Bennett sent a letter to Winn. (*See id.* ¶¶ 111–112, PageID.20.)  In that letter, Bennett detailed that Beal had accused him of being a child molester and a snitch, expressed that he "fear[ed his] life is in danger," and requested that Winn "<u>please</u> make an emergency cell change or place me in [protective custody]." (1/6/14 Letter to Winn, ECF No. 65-1, PageID.1406.) Bennett's letter also said that McLean "is aware of this situation, but he deliberately refused to do anything about it." (*Id.*)

On January 8, 2014, McLean summoned Bennett into his office and said: "Didn't I tell you not to go behind my back to the administration regarding anything that goes on in this unit?" (Compl. ¶ 113, ECF No. 1, PageID.20.)  Bennett responded by reiterating his safety concerns and again requesting that he be moved out of Beal's cell. (*See id.* ¶ 114, PageID.20–21.)  McLean then proclaimed, "You're gonna be moved alright!  You thought I was bullshitting.  Dress warm because your ass is going across that bridge!" (*Id.*)

McLean and Winn do not "recall receiving a [letter] from prisoner Bennett stating he was in fear of his life." (McLean Aff. ¶ 4, ECF No. 37-2, PageID.532; *see also* Winn Aff. ¶ 4, ECF No. 37-3, PageID.536.)  According to McLean, "If I received a kite stating a prisoner was in fear of his life, my standard response would have been to call him into my office to find out the circumstances.  I would have then completed a protection request for the [Security Classification Committee] team

5

to review.  If a prisoner stated he was in fear of his cell mate, I would have moved the prisoner to another cell or to another unit depending on the situation." (McLean Aff. ¶ 4, ECF No. 37-2, PageID.532.)  Winn similarly attests that, "If I received a [letter] stating a prisoner was in fear of his life, my standard response would have been to initiate an investigation of the threat." (Winn Aff. ¶ 4, ECF No. 37-3, PageID.536.)  McLean also does not "recall having any conversations with prisoner Bennett." (McLean Aff. ¶ 5, ECF No. 37-2, PageID.532.)  McLean further attests that "I have never told a prisoner that I would send them across the bridge or to Ionia." (*Id.* ¶ 7, PageID.533.)  Finally, McLean says that he does not "decide what prisoners go into protective custody" (*id.* ¶ 8), and Winn asserts that he does not "arrange for cell changes." (Winn Aff. ¶ 5, ECF No. 37-3, PageID.536.)

## B

By January 10, 2014, Bennett had not yet been transferred out of the cell he shared with Beal.  That day, as Bennett was walking from the chow hall to his unit, he entered an "L-shaped" walkway that connects the two areas. (*See* R&R, ECF No. 68, PageID.1451; Pl.'s Decl. ¶ 24, ECF No. 65, PageID.1270–1271.)  According to Bennett, it is "common knowledge among SRF corrections officers, as well as SRF inmates who lock in Housing Unit #600, that gang-related attacks and stabbings happen quite frequently on [Housing Unit] #600's 'L-shape' walkway, because this walkway is located in an isolated area of the prison." (Pl.'s Decl. ¶ 69, ECF No. 65,

PageID.1282; emphasis omitted.)  In fact, Bennett witnessed two beatings and one stabbing in the walkway area during the 28 days he spent in Unit #600. (*See id.*, PageID.1282–1283.)  No corrections officers were standing post at or near Unit #600 at the time of those assaults. (*See id.*)

At the time Bennett was passing through the L-shaped walkway, Florey and Wright were assigned to stand post and observe the walkway. (*See id.* ¶¶ 69–72, PageID.1282–1283.)  Despite the "common knowledge" that the walkway was a site of frequent violence, however, neither Florey nor Wright were at their posts.  Florey was instead "standing outside [the] chowhall talking with two unknown corrections officers." (*Id.* ¶ 71, PageID.1283.)  And Wright was instead "'chatting' with another officer" about 50 yards from the unit entrance door. (*Id.* ¶ 72.)

While Bennett was in the walkway, Beal – who was walking with a group of "Bloods" gang members – assaulted Bennett with a shank, stabbing him once in the neck and once in the upper right arm. (*See* R&R, ECF No. 68, PageID.1451; *see also* Compl. ¶¶ 118–129, ECF No. 1, PageID.21–23; Pl.'s Decl. ¶¶ 24–34, ECF No. 65, PageID.1270–1273; Critical Incident Report, ECF No. 65-1, PageID.1362.)  Bennett was sent to the hospital after the attack, where he was told that he was "very fortunate to be alive." (Pl.'s Decl. ¶ 25, ECF No. 65, PageID.1271.)   He continues to "experience numbness and chronic pain in [his] right hand and arm due to this stabbing incident." (*Id.* ¶ 26.)

7

## C

Bennett was transferred to a cell in Housing Unit #500 after the attack. (*See* Compl. ¶ 162, ECF No. 1, PageID.28.)  On January 16, 2014, six days after the attack, Bennett called his sister from the phones in Unit #500. (*See* Pl.'s Decl. ¶ 80, ECF No. 65, PageID.1285.)  He told her about the stabbing and that he had informed McLean and Winn about Beal's threats but that they had not moved him. (*See id.* ¶¶ 80–81, PageID.1285–1286.)  Bennett also told his sister that he was going to call his appellate attorney and inquire about filing a civil lawsuit against MDOC staff. (*See id.* ¶ 81, PageID.1286.)  The next day, on January 17, 2014, Bennett called his attorney and left a voicemail informing the attorney that he had been stabbed and saying that he needed legal advice about bringing a claim regarding McLean and Winn's failure to move him. (*See id.* ¶ 82.)

The following day, on January 18, 2014, Deshais conducted a shakedown of Bennett's new cell. (*See id.* ¶ 83.)  When Deshais entered the cell, he asked Bennett, "So you're the jailhouse lawyer trying to sue Winn, huh?" (*Id.* ¶ 84, PageID.1287.) After searching Bennett's cell, Deshais shouted "We got him!" and then produced a shank, a tattoo needle, and a razor blade that Deshais said he found in a locker in Bennett's cell. (*Id.* ¶¶ 84–85.)  Bennett insists that the needle and shank were not his. (*See id.* ¶ 91, PageID.1288.)  At a misconduct hearing, Bennett told the hearing officer that the shank could have been his cellmate's or could have been planted by

Deshais. (*See id.*; *see also* Misconduct Hr'g Report, ECF No. 37-4, PageID.544.) Bennett was ultimately found guilty of possessing dangerous contraband. (*See* Misconduct Hr'g Report, ECF No. 37-4, PageID.544.)

Bennett alleges here that Deshais and Winn conspired to plant the shank in his cell in retaliation for Bennett planning to sue prison officials. (*See* Compl. ¶¶ 172–177, ECF No. 1, PageID.30–31.)  Bennett's allegation is based on evidence that (1) Winn has the authority to monitor non-attorney outgoing calls from SRF's prisoner phones, (2) Winn admitted to Bennett that he knew Deshais, and (3) Deshais referenced Bennett's plans for a lawsuit when he searched Bennett's cell and found the contraband. (*See* Pl.'s Decl. ¶¶ 84–85, 97, 101, ECF No. 65, PageID.1287, 1290–1291.)  Winn, for his part, denies that he "ever conspired to have a weapon or other contraband planted on a prisoner or in a prisoner's cell." (Winn Aff. ¶ 7, ECF No. 37-3, PageID.537.)  Deshais did not specifically respond to Bennett's allegations. (*See* R&R, ECF No. 68, PageID.1485.)

On February 13, 2014, Bennett was transferred to the Bellamy Creek Correctional Facility ("IBC") in Ionia, Michigan. (*See* Transfer Order, ECF No. 65-1, PageID.1409.)  Bennett's transfer order says that the transfer request was due to the finding that Bennett possessed dangerous contraband. (*See id.*)

9

## II

Bennett filed this *pro se* civil rights action on July 10, 2017. (*See* Compl., ECF No. 1.)  On August 14, 2018, the Court granted partial summary judgment in favor of Defendants on some of Bennett's claims. (*See* 8/14/18 Order, ECF No. 31.) Bennett's remaining claims allege that McLean, Winn, Florey, and Wright violated the Eighth Amendment to the United States Constitution when they failed to protect him from the assault by Beal. (*See* Compl. ¶¶ 239–251, ECF No. 1, PageID.43–45.) Bennett further alleges that these officers were negligent under Michigan law for failing "to act with reasonable care to protect him from assaults by other prisoners." (*Id.* ¶¶ 252–265, PageID.46–48.)  Bennett also alleges that McLean, Winn, and Deshais violated the First Amendment to the United States Constitution when they retaliated against him for complaining about the attack and the officers' failure to protect him. (*See id.* ¶¶ 230–238, PageID.40–43.)

Defendants filed a Motion for Summary Judgment on March 8, 2019. (*See* Mot. for Summ. J., ECF No. 36.)  Defendants argued that Bennett lacks evidentiary support for his claims; they did not argue that they are entitled to qualified immunity for their actions. (*See* Addendum to Mot. for Summ. J., ECF No. 37.)  Bennett opposed the motion. (*See* Resp. to Mot. for Summ. J., ECF No. 65.)

On February 18, 2020, the assigned Magistrate Judge issued the R&R in which he recommended that Defendants' motion be granted in part and denied in

part. (*See* R&R, ECF No. 68.)  The Magistrate Judge recommended that Defendants'
motion be denied with respect to Bennett's Eighth Amendment and negligence
claims against McLean, Winn, Florey, and Wright. (*See id.*, PageID.1458–1477.)
The Magistrate Judge also recommended that Defendants' motion be denied with
respect to Bennett's First Amendment retaliation claim against Deshais. (*See id.*,
PageID.1490–1491.)  But the Magistrate Judge recommended that the Defendants
be granted summary judgment with respect to Bennett's First Amendment retaliation
claims against McLean and Winn. (*See id.*, PageID.1477–1490.)  The Magistrate
Judge also informed the parties that they were required to file any objections to the
R&R within 14 days. (*See id.*, PageID.1492.)

Defendants filed timely objections to the R&R on March 2, 2020. (*See*
Objections, ECF No. 69.)  Bennett responded to Defendants' Objections (*see* Resp.
to Objections, ECF No. 70), but he did not object to any portion of the R&R.

### III

Where a party objects to a portion of a Magistrate Judge's report and
recommendation, the Court reviews that portion *de novo*. *See* Fed. R. Civ. P.
72(b)(3); *Lyons v. Comm'r of Soc. Sec.*, 351 F. Supp. 2d 659, 661 (E.D. Mich. 2004).
The Court has no duty to conduct an independent review of the portions of the report
and recommendation to which a party has not objected. *See Thomas v. Arn*, 474 U.S.
140, 149 (1985).

A movant is entitled to summary judgment when it "shows that there is no genuine dispute as to any material fact." *SEC v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 326–27 (6th Cir. 2013) (citing Fed. R. Civ. P. 56(a)).  When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.* (quoting *Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006)).  "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Id.* at 251–52.  Indeed, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* at 255.

## IV

Defendants first object that the Magistrate Judge wrongly considered Bennett's documents that were filed late and did not adhere to the Local Rules. (*See* Objections, ECF No. 69, PageID.1495–1499.)  The Court overrules this objection. The Magistrate Judge properly exercised his discretion to overlook any potential rule violations and to address Defendants' motion on the merits.

12

**V**

Defendants next raise several substantive objections to the Magistrate Judge's recommended disposition. The Court will address each objection in turn.

**A**

The Court begins with Bennett's Eighth Amendment failure-to protect claims against Defendants McLean and Winn. (*See* Compl. ¶¶ 243–244, 247–248, ECF No. 1, PageID.43–45.) Bennett alleges that both McLean and Winn acted with deliberate indifference to his safety when they failed to take reasonable measures to protect him after they learned about Beal's threats against him. (*See id.*)

An Eighth Amendment failure-to-protect claim has both an objective and a subjective element. To satisfy the objective element, "a prison inmate . . . must show that the failure to protect from risk of harm is objectively 'sufficiently serious.'" *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)). To satisfy the subjective element, "a plaintiff . . . must show that prison officials acted with 'deliberate indifference' to inmate health or safety." *Id.* "An official is deliberately indifferent if he or she 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference.'" *Id.* at 766–67 (quoting *Farmer*, 511 U.S. at 837). "Whether a prison official had the requisite

13

knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* at 767 (quoting *Farmer*, 511 U.S. at 842).

In their motion, Defendants argued that Bennett failed to show that McLean and Winn acted with deliberate indifference:

> Bennett alleges that his cellmate, Beal [], was hostile towards him but that McLean and Winn refused to move Bennett to another cell. McLean and Winn assert that this allegation is false.
>
> McLean does not recall any conversations with Bennett, including regarding his cellmate Beal. McLean does not recall Bennett ever telling him that he was in fear of Beal or needed protection. Had Bennett done so, McLean would have completed a protection request and moved Bennett to another cell either in his unit or another unit. Winn does not recall receiving any kites from Bennett regarding his cellmate Beal or that he was in fear of his life. As Deputy Warden, Winn would not have arranged a cell change as that is handled by housing staff. If he was made aware of a threat, Winn would have made sure the threat was investigated.
>
> Bennett and Beal were cellmates from December 12, 2013 through January 10, 2014 and there is no record that Bennett reported to any housing unit staff that he had an issue with Beal that required him to be moved. On January 10, 2014, Bennett was assaulted by Beal on the walk from the chow-hall back to the housing unit. . . .
>
> Defendants were not aware of any danger to Bennett because the assault was a sudden and isolated incident,

14

which they had no prior knowledge was going to take place.

\* \* \*

Bennett has . . . failed to prove facts sufficient to establish deliberate indifference by McLean [and] Winn . . . to an unreasonable risk of injury. The act or omission of the prison official must also display a deliberate indifference to the unreasonable risk of injury. This crucial element is lacking in this case. At best, these facts show an isolated incident not connected with previous violence that could establish any pattern. Additionally, Bennett's request for a cell change would not have prevented the assault on Bennett, because the assault occurred in a common area of the prison, not in his cell. . . . Bennett has failed to assert any evidence of intentional conduct or deliberate indifference to his safety and McLean [and] Winn . . . are entitled to summary judgment on Bennett's Eighth Amendment failure to protect claims.

(Addendum to Mot. for Summ. J., ECF No. 37, PageID.515–516, 520–521; citations omitted.)

The Magistrate Judge carefully reviewed each portion of this argument. First, the Magistrate Judge concluded that the thrust of Defendants' argument came down to a credibility contest between Bennett and the officers regarding whether Bennett told McLean and Winn about the danger posed by Beal. (*See* R&R, ECF No. 68, PageID.1458–1466.) Because Bennett had presented sufficient evidence that he had informed the officers about the danger – including his sworn declaration and his letters to McLean and Winn – the Magistrate Judge found that Bennett had raised a

15

genuine issue of material fact whether the officers were aware of a substantial threat to Bennett but nevertheless failed to protect him. (*See id.*)

Second, the Magistrate Judge thoroughly reviewed the case law cited by Defendants.   In particular, the Magistrate Judge carefully distinguished a Sixth Circuit decision, *Stewart v. Love*, 696 F.2d 43 (6th Cir. 1982), that was cited by Defendants to argue that McLean and Winn could not be liable for Beal's attack on Bennett because it was an isolated incident. (*See* R&R, ECF No. 68, PageID.1462– 1463.)   As the Magistrate Judge explained, the officers in *Stewart* were not deliberately indifferent because, unlike the officers here, they "had taken at least some action in response to the prisoner's concerns." (*Id.*, PageID.1462.)  Moreover, the Court in *Stewart* noted that "[h]ad no action whatsoever been taken to protect the plaintiff, the court would be inclined to allow this action to proceed to a full hearing." *Stewart*, 696 F.2d at 45.

Third, the Magistrate Judge addressed Defendants' argument that Bennett's request for a cell change, if granted, would not have prevented the assault because the assault occurred in a common area of the prison, not in his cell. (*See* R&R, ECF No. 68, PageID.1466.)  According to the Magistrate Judge:

> This argument misses plaintiff's point.  Plaintiff told the defendants that Beal wanted him out of their cell.  It is reasonable to infer, based on the facts presented here, that Beal would have become increas[ingly] angry if plaintiff remained in the cell.  On the other hand, it appears that Beal would have been satisfied if plaintiff had been

> moved.  If he was moved, there is no indication that the
> attack would have happened.  Further, defendants cite no
> support for the assertion that the attack must take place in
> the cell under these circumstances in order for their
> inaction to be considered a constitutional violation.

(*Id.*)

Defendants object to the Magistrate Judge's conclusion that Bennett presented

sufficient evidence of deliberate indifference:

> The Magistrate correctly noted that there is a question of
> fact as to whether Plaintiff told McLean and Winn that he
> believed he was in danger, but failed to address McLean
> and Winn's uncontroverted statements that if they believe
> a prisoner is in danger they would have completed
> protection requests. (Affidavit of McLean, R.37-2,
> PgID.532, and Affidavit of Winn, R.37-3, PgID.536.)  For
> Plaintiff to prove an Eighth Amendment violation, he must
> show that Winn and McLean not only had actual
> knowledge of facts upon which a reasonable person might
> infer a substantial risk to Plaintiff, but that Winn and
> McLean actually drew the inference. . . .  It is uncontested
> that if Winn and McLean drew the inference that Plaintiff
> was facing a substantial risk of harm, they would have
> completed a protection request.  While Plaintiff tries to
> show that Winn and McLean had knowledge of the risk,
> his evidence amounts to hearsay and is not admissible.
> Because there was no protection request prior to the
> assault on Bennett, the Magistrate should have determined
> that Winn and McLean did not draw the inference that
> Bennett faced a substantial risk of harm.  The Magistrate
> erred in not determining that Winn and McLean did not
> infer that Plaintiff faced a substantial risk of harm and
> Defendants Winn and McLean are entitled to summary
> judgment.

(Objections, ECF No. 69, PageID.1499–1500.)

The Court overrules Defendants' objection because it differs from the argument raised in their motion. Defendants did not argue in their motion – as they do in their Objections – that even if McLean and Winn were aware of Beal's threat, Bennett's claim would still fail because there is no evidence that McLean and Winn actually inferred, based upon their knowledge of the threat, that Bennett was in serious danger. Instead, Defendants argued in their motion that McLean and Winn could not have inferred that Bennett was in danger *because McLean and Winn did not know about the threat by Beal*.[3] (*See* Addendum to Mot. for Summ. J., ECF No. 37, PageID.515–516, 520–521.) The Magistrate Judge correctly rejected that argument because there is a factual dispute as to whether Bennett told McLean and Winn about the danger posed by Beal.[4]

_____

[3] Defendants' argument in their motion tracked McLean's and Winn's affidavits. In those affidavits, McLean and Winn attested that Bennett never informed them of a threat. (*See, e.g.*, McLean Aff. ¶ 5, ECF No. 37-2, PageID.532 ("I do not recall having any conversations with prisoner Bennett."); Winn Aff. ¶ 4, ECF No. 37-3, PageID.536 ("I do not recall receiving any kites from prisoner Bennett stating he was in fear of his life.").) McLean and Winn did not say Bennett informed them of a threat and that after considering the threat, they determined that he was not in danger.

[4] As noted above, Defendants argued in their motion for summary judgment that Bennett's claim failed because (1) Bennett was attacked in a common area, not in his cell, and thus (2) Bennett's request for a cell change, if granted, would not have prevented the attack. As further noted above, the Magistrate Judge rejected that argument. Defendants do not object to the Magistrate Judge's rejection of that argument. The Court nonetheless notes that the argument fails for an additional reason beyond those given by the Magistrate Judge. The argument rests upon the

**B**

The Court turns next to Bennett's Eighth Amendment failure-to-protect claims against Defendants Wright and Florey.

Bennett alleges that Wright and Florey "knowingly expose[d] [Bennett] to a substantial risk of serious harm, by willfully abandoning their security post in an isolated and highly-assaultive area of housing unit #600 walkway during mass prisoner movement." (Compl. ¶ 246, ECF No. 1, PageID.44.)  Defendants argued in their motion that they are entitled to summary judgment on this claim because "Bennett has not alleged any facts that Florey or Wright had any awareness of danger to Bennett, merely that they were not where he thinks they should have been on the walkway." (Addendum to Mot. for Summ. J., ECF No. 37, PageID.520–521.)

The Magistrate Judge recommended that the Court deny summary judgment on Bennett's Eighth Amendment claims against Florey and Wright because a reasonable jury could find that the officers disregarded a known risk by not standing at their posts. (*See* R&R, ECF No. 68, PageID.1466–1472.)  According to the Magistrate Judge, Bennett "presented unrebutted evidence that it was common knowledge among corrections officers that inmate attacks in the walkway happened

---

mistaken premise that Bennett requested only a cell change.  Bennett has presented evidence that he requested to be moved to a different unit and/or to be moved to segregation. (*See, e.g.*, 1/5/14 Letter to McLean, ECF No. 65-1, PageID.1358; Compl. ¶ 102–105, ECF No. 1, PageID.18–19.)

frequently" and that "Florey and Wright were regularly assigned to the walkway." (*Id.*, PageID.1470.)   Therefore, the Magistrate Judge determined that "[i]t is reasonable to infer that Florey and Wright were thus aware of the frequency of attacks but disregarded the risk by not standing at their posts." (*Id.*)

Defendants object that the Magistrate Judge "accept[ed] Plaintiff's assertion that there were 'frequent' violent attacks in the L-shaped walkway" despite Bennett "not offer[ing] any evidence or factual allegations to show that there are 'frequent' violent attacks at this location of the correctional facility." (Objections, ECF No. 69, PageID.1501.)   Defendants also argue that "the Magistrate erred in determining that Plaintiff has provided any evidence to show Florey and Wright knew of and inferred that prisoners are exposed to a substantial risk of serious harm in the L-shaped walkway." (*Id.*, PageID.1502.)

The Court disagrees.   Bennett presented evidence that the particular walkway in question was unreasonably dangerous, that it was common knowledge among SRF staff that the walkway was dangerous, and that Florey and Wright nonetheless left their posts and thereby left Bennett vulnerable to an attack. (*See, e.g.*, Pl's Decl. ¶ 69, ECF No. 65, PageID.1282.)   Moreover, Bennett supported his contention that the walkway was especially dangerous by presenting evidence that he witnessed two beatings and one stabbing in the walkway area during a 28-day period. (*See id.*,

PageID.1282–1283.)   For all of these reasons, the Magistrate Judge correctly

recommended that the Court deny summary judgment to Florey and Wright.[5]

C

The Court next turns to Bennett's claim under state law that Winn, McLean,

Florey, and Wright were negligent for failing to protect him.[6]

---

[5] The Magistrate Judge also addressed an additional issue: whether the fact that another corrections officer – Marvin Sanders – was present in the walkway at the time of the incident is fatal to Bennett's deliberate indifference claim against Florey and Wright. (*See* R&R, ECF No. 68, PageID.1471–1472; *see also* Critical Incident Report, ECF No. 37-4, PageID.548.)   It is unclear why the Magistrate Judge addressed this issue, as Defendants did not argue this point in their Motion for Summary Judgment. (*See* Addendum to Mot. for Summ. J., ECF No. 37, PageID.513–521.)   The Magistrate Judge concluded that "even though Sanders states he was in the walkway and heard a thud, it is not clear that this would absolve Florey and Wright of liability if they were also supposed to be there.  If they were there, it is conceivable that the attack might not have happened." (R&R, ECF No. 68, PageID.1472.)

In Defendants' Objections, they contend that "[t]he fact that Sanders saw the assault on Plaintiff and quickly responded highlights Plaintiff's conclusory allegation that had Florey and Wright been where he wanted them to be, he would not have been assaulted." (*Id.*, PageID.1503.)   To the extent Defendants object to the Magistrate Judge's finding with respect to Sanders' presence in the walkway, the Court overrules this objection.  The fact that Sanders' presence in the general area did not prevent the attack does not establish, as a matter of law, that the attack would have happened even if Florey and Wright were at their posts in the walkway area. (*See* R&R, ECF No. 68, PageID.1472.)

[6] Bennett styles this claim as a "gross negligence" claim. (*See* Compl., ECF No. 1, PageID.46.)   As the Sixth Circuit has recognized, however, there is a question whether there is an independent cause of action for gross negligence under Michigan law. *See Bletz v. Gribble*, 641 F.3d 743, 756 (6th Cir. 2011).  The Court, giving a liberal construction to Bennett's *pro se* pleadings, reads Bennett's Complaint not as

21

Bennett's negligence claim is "based on the same conduct that forms the failure to protect claims against these defendants." (R&R, ECF No. 68, PageID.1472.)  Bennett alleges that Winn, McLean, Florey, and Wright owed him "a duty to act with reasonable care to protect him from assaults by other prisoners." (Compl. ¶ 253, ECF No. 1, PageID.46.)  According to Bennett, the officers breached this duty when they failed to protect him from Beal. (*See id.* ¶ 257, PageID.46–47.)

Defendants argued in their motion that they have state-law tort immunity and are therefore entitled to summary judgment on Bennett's negligence claim.  Under the Michigan Governmental Tort Liability Act (the "GTLA"), corrections officers are entitled to tort immunity so long as their conduct (a) was not grossly negligent and (b) was not the proximate cause of a prisoner's injury. *See* Mich. Comp. Laws § 691.1407(2).  In the GTLA context, "proximate cause" is "the one most immediate, efficient, and direct cause of the injury or damage." *Robinson v. City of Detroit*, 613 N.W.2d 307, 319 (Mich. 2000).  According to Defendants, Beal's stabbing of Bennett – rather than any action or inaction on the part of the officers – was the proximate cause of Bennett's injury. (*See* Addendum to Mot. for Summ. J., ECF No. 37, PageID.522.)  Defendants therefore argued that they were entitled to

_____

bringing a claim for "gross negligence," but rather as bringing a negligence claim against these Defendants and arguing that their conduct was so grossly negligent that they are not entitled to state-law immunity.

22

GTLA immunity because they were not the proximate cause of Bennett's injury. (*See id.*)

The Magistrate Judge disagreed. The Magistrate Judge noted that "there are multiple variables affecting the determination of respective negligence. We have the defendants' actions, discussed above. Of course, Beal is an important actor in plaintiff's injury as well. Perhaps plaintiff had some part in this in allowing himself to walk closely to the inmates, and Beal, ahead of him in the walkway." (R&R, ECF No. 68, PageID.1476.) Accordingly, the Magistrate Judge concluded that, "[o]n these facts, and drawing reasonable inferences in plaintiff's favor, the defendants' actions could have been *the* proximate cause of plaintiff's injury." (*Id.*)

Defendants raise two objections to the Magistrate Judge's recommendation. First, Defendants argue that the Magistrate Judge "did not note that the proximate cause" under the GTLA is the "one most immediate, efficient, and direct cause of the injuries." (Objections, ECF No. 69, PageID.1504; quoting *Ray v. Swager* (*Ray II*), 909 N.W.2d 917, 920 (Mich. Ct. App. 2017).) The Defendants are incorrect. The Magistrate Judge specifically quoted the language that Defendants say he failed to note:

> Once the various proximate causes have been determined, the question then becomes whether taking all possible proximate causes into account, the government actor's gross negligence was *the* proximate cause of injury. This requires considering defendant's actions alongside any potential proximate causes to determine whether

> defendant's actions were, or could have been, the *one most immediate, efficient, and direct cause of the injuries*. The relevant inquiry is not whether the defendant's conduct was the immediate factual cause of the injury, but whether, weighing the legal responsibilities of the actors involved, the government actor could be considered the proximate cause.

(R&R, ECF No. 68, PageID.1474–1475; first emphasis in original; second emphasis added; quoting *Ray II*, 909 N.W.2d at 920.)

Second, Defendants object to the Magistrate Judge's "determination that there is a question of fact as to 'the proximate cause' of Plaintiff's injury." (Objections, ECF No. 69, PageID.1503.)  According to Defendants, "[b]ecause the proximate cause of Plaintiff's injuries was the criminal attack of another prisoner, Defendants are entitled to summary judgment on Plaintiff's gross negligence claim." (*Id.*, PageID.1504.)

The Court disagrees.  According to the Michigan Supreme Court, "the well-established understanding of proximate cause . . . involves the foreseeability of the consequences of the conduct of human actors, regardless of whether 'a proximate cause' or 'the proximate cause' is at issue." *Ray v. Swager* (*Ray I*), 903 N.W.2d 366, 373 (Mich. 2017).  The court noted that its definition of proximate cause is the same today as it was "[a]lmost one hundred years ago":

> If a man does an act and he knows, or by the exercise of reasonable foresight should have known, that in the event of such a subsequent occurrence, which is not unlikely to happen, injury may result from his act, and such

24

> subsequent occurrence does happen and injury does result,
> the act committed is negligent, and will be deemed to be
> *the proximate cause* of the injury.

*Id.* (quoting *Northern Oil Co. v. Vandervort*, 200 N.W. 145 (1924)).  Here, viewing the facts in the light most favorable to Bennett, a reasonable jury could find that the officers' failure to prevent a foreseeable harm – an attack by Beal – was the proximate cause of Bennett's injuries.  Thus, the officers are not entitled to summary judgment on Bennett's negligence claim.

## D

Finally, the Court turns to Bennett's First Amendment retaliation claim against Deshais.

Bennett alleges that Deshais "engage[d] [in an] unlawful conspiracy with Defendant Winn to 'plant' illegal contraband weapons in Plaintiff's cell during a bogus shakedown." (Compl. ¶ 237, ECF No. 1, PageID.42.)  Bennett contends that Deshais planted the contraband in retaliation for him (Bennett) planning to file a lawsuit regarding his attack. (*See id.* ¶¶ 237–238, PageID.42–43.)

"A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two – that

is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

In the motion for summary judgment, Defendants argued that Bennett's retaliation claim against Deshais fails because "Deshais did not take any adverse actions against Plaintiff and did not know of Plaintiff's protected conduct." (Addendum to Mot. for Summ. J., ECF No. 37, PageID.526.)  According to Defendants, "Plaintiff's claim that the contraband was planted by Deshais is merely conclusory and is refuted by the misconduct hearing report where Plaintiff admitted that at least the razor was his and alleged that the shank was his cellmate's." (*Id.*) And Defendants argued that "Plaintiff has failed to allege that Deshais had any knowledge of Plaintiff's protected conduct." (*Id.*)

The Magistrate Judge, however, concluded that there is a question of material fact with respect to whether Deshais knew about Bennett's protected conduct and whether Deshais engaged in an adverse action against Bennett. (*See* R&R, ECF No. 68, PageID.1490–1491.)  First, the Magistrate Judge rejected Defendants' contention that Bennett's claim failed because the factual basis for the claim – i.e., that Deshais planted the shank in his cell – was inconsistent with Bennett's statements during the misconduct proceedings.  As the Magistrate Judge explained, "[w]hile it is true that the misconduct report recorded that plaintiff blamed his cell mate for the shank, plaintiff has rebutted this evidence with his declaration in which

he states he also said, at the misconduct hearing, that it could have been planted there by [Deshais]." (*Id.*, PageID.1490; citing Pl.'s Decl. ¶ 92, ECF No. 65, PageID.1288.) Second, the Magistrate Judge concluded that Bennett "created a question of material fact on this retaliation claim." (*Id.*)  According to the Magistrate Judge:

> [Bennett] has brought forth evidence suggesting that [Deshais] became aware—somehow—that he was planning to file a lawsuit against Winn about the failure to protect him from the attack.  He also avers that he did not have or own the shank or tattoo needle, but once [Deshais] gained access to plaintiff's cell, [Deshais] came upon these objects.  Based on this evidence, it is reasonable to infer that [Deshais] planted the contraband; and, [Deshais] did not submit evidence to the contrary (for example, by way of affidavit disputing that he planted the evidence).

(*Id.*, PageID.1490–1491.)

Defendants object that "there is no competent evidence that Deshais knew of Plaintiff's protected conduct" beyond "Plaintiff's conclusory allegations." (Objections, ECF No. 69, PageID.1505–1506.)  And Defendants argue that because Bennett was found guilty of a Class I misconduct offense by a hearing officer, that "finding precludes a jury from finding that Deshais planted the weapon in retaliation for Plaintiff's alleged protected conduct." (*Id.*, PageID.1506; citing *Peterson v. Johnson*, 714 F.3d 905, 908–11 (6th Cir. 2013).)

The Court overrules both of these objections.  First, as the Magistrate Judge noted, Bennett provided specific evidence that Deshais knew of his (Bennett's) protected conduct.  That evidence was Bennett's sworn statement that Deshais

27

referred to Bennett's intent to file a lawsuit just before Deshais announced his discovery of the shank (that Bennett says he did not own) in Bennett's cell. (*See* Pl.'s Decl. ¶¶ 84–85, ECF No. 65, PageID.1287.)  Second, Defendants cannot now object that the result of Bennett's misconduct hearing had a preclusive effect, because they failed to present this argument in their summary judgment motion.  Defendants devoted only one paragraph of their motion to discussing Bennett's claims against Deshais, and they did not argue that the result of Bennett's misconduct hearing had a preclusive effect – only that Bennett's allegation was "refuted" by the misconduct hearing record. (Addendum to Mot. for Summ. J., ECF No. 37, PageID.526.) Defendants cannot now raise this issue for the first time in their objections to the R&R.

## VI

Bennett did not object to the Magistrate Judge's recommendation that the Defendants be granted summary judgment with respect to his First Amendment retaliation claims against Defendants McLean and Winn. (*See* R&R, ECF No. 68, PageID.1477–1490.)  Accordingly, the Court has no duty to independently review this portion of the R&R, and the Court will adopt the Magistrate Judge's recommended disposition with respect to these claims. *See Thomas v. Arn*, 474 U.S. 140, 149 (1985).

# VII

Accordingly, for the reasons explained above:

- Defendants' Objections to the R&R (ECF No. 69) are **OVERRULED**;

- The recommended disposition of the R&R (ECF No. 68) is **ADOPTED**; and

- Defendants' Motion for Summary Judgment (ECF No. 36) is **GRANTED IN PART** and **DENIED IN PART**.  Defendants shall be granted summary judgment with respect to Bennett's First Amendment retaliation claims against Defendants McLean and Winn.  But Bennett's action shall proceed with respect to his First Amendment claim against Defendant Deshais as well as his Eighth Amendment and gross negligence claims against Defendants McLean, Winn, Florey, and Wright.

**IT IS SO ORDERED**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  July 16, 2020


I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on July 16, 2020, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(810) 341-9764